IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL SHIPTON )<br>10 West Taunton Road )<br>Berlin, New Jersey 08009 )<br> )<br>       Plaintiff, )<br> )<br>   v. )<br> )<br>BALTIMORE GAS & ELECTRIC )<br>COMPANY, EXELON CORPORATION, )<br>and EXELON BUSINESS SERVICES )<br>COMPANY, LLC, MICHAEL )<br>GROSSCUP, EDWARD WOLFORD, )<br>JEANNE STORCK, and THEOS )<br>MCKINNEY )<br>Serve on Registered Agent: )<br>Corporate Creations Network Inc. )<br>2 Wisconsin Circle, #700 )<br>Chevy Chase, Maryland 20815 )<br> )<br>       Defendants. )<br>_____ ) | Civil No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Michael Shipton (hereinafter "Plaintiff" or "Mr. Shipton"), by and through his attorneys, Tonya Baña and Tonya Baña LLC, hereby files this Complaint against Defendants Baltimore Gas and Electric Company ("BGE"), Exelon Corporation ("Exelon") and Exelon Business Services Company, LLC ("EBSC") (together referred to as the "Corporate Defendants"), Michael Grosscup ("Mr. Grosscup"), Edward Wolford ("Mr. Wolford"), Jeanne Storck ("Ms. Storck"), and Theos McKinney ("Mr. McKinney") (all collectively referred to as "Defendants") to redress discrimination and interference with rights in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (the "FMLA") arising from

1

Defendants' unlawful termination of Mr. Shipton's employment for missing work for a serious health condition, and in support thereof states as follows:

## NATURE OF THE ACTION

1. Mr. Shipton brings this action to redress discrimination and retaliation perpetrated by one of the nation's largest utility providers. Although Mr. Shipton notified his supervisors that his periodic absences from work were for diabetes and diabetes-related complications, for over three years Defendants failed to properly notify him of his rights under the FMLA while giving him poor performance reviews and withholding promotional opportunities and pay increases based solely on his attendance. After Mr. Shipton applied for and was approved to take intermittent FMLA leave for his serious health condition, Defendants continued to hold his statutorily protected absences against him, took away his driving privileges based on pretextual concerns about his ability to safely drive a vehicle, scrutinized his attendance, and, ultimately, terminated him for alleged "misuse of sick leave" for missing work for a serious health condition. Through this action, Mr. Shipton seeks to recover all wages, salary, employment benefits, and other compensation denied or lost him as a result of Defendants' violations during the period of discrimination and retaliation through trial plus interest on that amount calculated at the prevailing rate; an additional amount equal to the proceeding amount as liquidated damages; such equitable relief as may be appropriate, including reinstatement, promotion, and declaratory and/or injunctive relief to prevent future acts of discrimination and retaliation by Defendants; reasonable attorney's fees, reasonable expert witness fees, and other costs of this action; and such other and further relief as the Court may deem proper.

## PARTIES

2. Plaintiff Michael Shipton is a citizen and resident of New Jersey who was employed by BGE from March 2014 to June 2018. At all relevant times, Mr. Shipton worked as a Gas Mechanic and reported to BGE's Spring Gardens campus located in Baltimore City, Maryland.

3. Defendant BGE is a Maryland corporation organized and existing under the laws of the State of Maryland with its principal place of business located in Baltimore, Maryland. BGE is a public utility that provides electricity to more than 1.2 million residential customers and gas to more than 650,000 customers in Maryland. BGE employs about 3,100 employees at various locations throughout the State of Maryland. BGE is and at all relevant times was a subsidiary of Exelon.

4. Defendant Exelon is a foreign corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Chicago, Illinois. Exelon is a public utility holding company that does business in 48 states and the District of Columbia and employs approximately 34,000 people nationwide.

5. Defendant EBSC is a foreign limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Chicago, Illinois. EBSC is a shared service company that provides a variety of support services, including finance, human resources, information technology, and legal services, to all Exelon subsidiaries, including BGE

6. Defendant Michael A. Grosscup is a citizen and resident of Maryland. Mr. Grosscup is and at all relevant times was employed by BGE as a Supervisor in the Gas Construction and Maintenance Department. Mr. Grosscup was a direct and substantial

participant in the wrongful conduct alleged herein and at all times mentioned herein was acting both individually and as an actual and/or apparent agent, servant, and/or employee of BGE and/or Exelon and was acting, directly or indirectly, in the interest of BGE and/or Exelon with respect to Mr. Shipton.

7. Defendant Edward Wolford is a citizen and resident of Maryland. Mr. Wolford is and at all relevant times was employed by BGE as a Manager in the Gas Construction and Maintenance Department. Mr. Wolford was a direct and substantial participant in the wrongful conduct alleged herein and at all times mentioned herein was acting both individually and as an actual and/or apparent agent, servant, and/or employee of BGE and/or Exelon and was acting, directly or indirectly, in the interest of BGE and/or Exelon with respect to Mr. Shipton.

8. Defendant Jeanne Storck is a citizen and resident of Maryland. Ms. Storck is and at all relevant times was employed by BGE as a Human Resources Business Partner. Ms. Storck was a direct and substantial participant in the wrongful conduct alleged herein and at all times mentioned herein was acting both individually and as an actual and/or apparent agent, servant, and/or employee of BGE and/or Exelon and was acting, directly or indirectly, in the interest of BGE and/or Exelon with respect to Mr. Shipton.

9. Defendant Theos McKinney is a citizen and resident of Pennsylvania. Mr. McKinney is and at all relevant times was employed by Exelon and/or EBSC as Assistant General Counsel. Mr. McKinney was a direct and substantial participant in the wrongful conduct alleged herein and at all times mentioned herein was acting both individually and as an actual and/or apparent agent, servant, and/or employee of BGE and/or Exelon and was acting, directly or indirectly, in the interest of BGE and/or Exelon with respect to Mr. Shipton.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the FMLA. Personal jurisdiction is proper under Maryland's long-arm statute because Defendants conduct extensive business in Maryland and the events giving rise to this litigation occurred in Maryland.

11. Venue is proper in this District because Mr. Shipton worked at a facility located in this District and a substantial part of the events giving rise to his claims took place in the District.

## STATEMENT OF FACTS

12. Mr. Shipton is a professional utility worker with more than a dozen years of experience installing, maintaining, and repairing wire, conduit, and pipe for major service providers in both the telecommunications and utility industries. Before relocating to Maryland to pursue a career in gas construction and maintenance with BGE, Mr. Shipton spent approximately two years working for Danella Line Services in New Jersey, about five years working as an installation technician for Verizon in New Jersey, and then relocated to Pennsylvania where he spent an additional two years working as a foreman directional driller for Danella Line Services. Following Mr. Shipton's unlawful termination by BGE, he returned to New Jersey where he has since been rehired by Verizon and now works as a lineman. In sum, Mr. Shipton is a highly skilled, dedicated and valued employee who was well-qualified for his work at BGE.

13. BGE initially hired Mr. Shipton as a gas/utility trainee in or around March 2014.

14. Approximately a year and a half later, Mr. Shipton graduated to a position as a regular Gas Mechanic.

15. Mr. Shipton first applied for FMLA after he developed viral meningitis and was hospitalized for several days and was out of work for about three weeks in 2015. BGE's Occupational Health Services contacted him and asked him to complete the necessary paperwork upon learning that he had been hospitalized.

16. By way of background, in or around 2003 Mr. Shipton was diagnosed with diabetes, a "serious health condition" within the meaning of the FMLA. As a result of his diabetes, he suffers from diabetes-related conditions and complications such as neuropathy, digestive problems, skin infections, fungal infections, and hypoglycemia or low blood sugar. Further, because his immune system is compromised as a result of these conditions, he is more susceptible to conditions like the common cold, the flu, ear aches, and strep throat and he is more likely to have complications and/or a more serious case of these illnesses.

17. Throughout his employment with BGE, Mr. Shipton periodically missed work due to his diabetes and diabetes-related conditions and complications. For example, in March 2015, he was absent from work for bronchitis. In December 2015, he was absent from work for serous otitis. In March 2016, he was absent from work for sinusitis. In January 2017, he was absent from work for sinusitis and pharyngitis as well as bronchitis. And, in March 2017, he was absent from work for an unspecified upper respiratory illness.

18. Although Mr. Shipton told his supervisors that nearly all of his absences related to his diabetes and diabetes-related conditions and complications, no further information was provided to him regarding his rights under the FMLA for nearly two years after he first applied for leave when he was hospitalized with meningitis. At the same time, Mr. Shipton's supervisors proceeded to give Mr. Shipton poor performance reviews, to deny him promotional

opportunities, and to withhold pay increases and bonuses from him based solely on absences they knew or should have known were for a serious health condition.

19. In early 2016, Mr. Shipton received his annual performance review for 2015, which criticized him for his absenteeism. Mr. Shipton complained to Supervisor John Lang that all of his absences related to his health condition. However, no information was provided regarding his rights under the FMLA.

20. In January 2017, Mr. Shipton received his annual performance review for 2016, which again criticized him for his pattern of absences. Although Mr. Shipton received a satisfactory performance rating, as a result of the criticism regarding his attendance he did not receive a promotion or a step increase and his bonus was reduced. Mr. Shipton complained to Mr. Grosscup, who had recently become his Supervisor. However, Mr. Grosscup told Mr. Shipton there was nothing he could do.

21. Mr. Shipton also complained to Human Resources. Although he explained that he only missed work when he was sick, the Human Resources representative maintained that his pattern of absences showed that he was trying to extend his weekends. He pointed out that he often volunteered to work the weekends. However, his poor performance review remained unchanged and no information was provided regarding his rights under the FMLA.

22. In March 2017, Mr. Grosscup unilaterally reassigned Mr. Shipton from a three-man crew to a two-man crew working with a Crew Leader in his 60s. Due to the smaller size of his new crew as well as the advanced age of his new Crew Leader, Mr. Shipton's workload increased and his job duties became more physically demanding.

23. By mid-2017, Mr. Shipton had exhausted his annual sick leave allotment.

24. For the first time, Mr. Grosscup informed Mr. Shipton that he could apply for intermittent FMLA leave for his diabetes-related absences.

25. Mr. Shipton submitted the necessary paperwork in or around July 2017. The paperwork indicated that Mr. Shipton needed unscheduled intermittent leave for up to 3 consecutive calendar days 1-2 times per month for episodes of incapacity due to flare-ups. The paperwork explained that Mr. Shipton needed the leave because he is a diabetic. The only complication mentioned in the paperwork was hypoglycemia.

26. On August 25, 2017, Mr. Shipton received written notice that his FMLA request had been approved.

27. In February 2018, Mr. Shipton received his annual performance review for 2017. Although he received a cost of living adjustment, due to his attendance, he did not receive a step increase and his bonus was reduced. Notably, Mr. Shipton's only attendance issue was absences related to his health condition. However, the performance review incorrectly stated that he had a problem with lateness as well. When Mr. Shipton pointed out this discrepancy to Mr. Grosscup, Mr. Grosscup responded, "Sorry, that's just the way I wrote it up."

28. Mr. Shipton also complained to Human Resources. He specifically advised his Human Resources Business Partner, Jeanne Storck, that his performance review was unfair because the poor rating was based solely on his health-related absences. Ms. Storck responded that she "heard it was about more than just medical leave" and told Mr. Shipton there was nothing she could.

29. Mr. Shipton then complained to the Manager for Gas Construction and Maintenance, Edward Wolford. He told Mr. Wolford that he volunteered to work weekends and pointed out that his Crew Leader was a top producer and had received an excellent performance

8

review.  He questioned how his supervisors could reconcile his poor performance review with his Crew Leader's outstanding production.  Mr. Wolford responded, "So how do I know production doesn't skyrocket when you're absent?"

30.  In April 2018, Mr. Shipton was scheduled to be off from work for a planned vacation.  The week before his vacation, he developed severe foot pain from diabetic neuropathy, which is a common complication of diabetes in which nerves are damaged as a result of hyperglycemia or high blood sugar levels.  As a result of calling out three days before he was scheduled to leave for vacation, Ms. Storck called him and told him he had to report to BGE's Occupational Health Services to be evaluated. He did as directed and then went on vacation the following day.

31.  When Mr. Shipton returned to work after his vacation, Mr. Grosscup informed him that he had to report for another evaluation by Occupational Health Services.  When Mr. Shipton met with Occupational Health Services the next day, he was informed that he would no longer be allowed to drive a commercial vehicle due to safety concerns based on the symptoms listed in his FMLA paperwork.  As a result of the suspension of his driving privileges, he was prevented from working overtime.

32.  Mr. Shipton presented documentation from his endocrinologist confirming that he could safely drive a commercial vehicle.  However, he was advised that this documentation was insufficient and that he had to obtain updated paperwork from the same health care provider who issued the FMLA paperwork.  Mr. Shipton did as he was directed and submitted the additional paperwork.

33. On the morning of Sunday, June 3, 2018, Mr. Shipton woke up with a severe sore throat. He sought treatment at an urgent care facility and was diagnosed with acute viral pharyngitis and prescribed Triamcinolone nasal spray and Amoxicillin.

34. That week, Mr. Shipton was scheduled to work from 3 PM to 11 PM on Monday through Friday. On Monday, June 4, 2018, he called Mr. Grosscup and notified him that he was sick and unable to work.

35. On Tuesday, June 5, 2018, Mr. Shipton called Mr. Grosscup again and notified him that he was still sick and unable to work.

36. On the morning of Wednesday, June 6, 2018, Mr. Shipton again sought treatment at the urgent care facility and was diagnosed with sinusitis and bacterial bronchitis and prescribed Robitussin, Tessalon Perles, and Augmentin. He was cleared to return to work on Friday, June 8, 2018. He called Mr. Grosscup and informed Mr. Grosscup that he had sought further treatment, he had been prescribed stronger medication, and he would be able to return to work on Friday. He also volunteered to work the weekend.

37. On Thursday, June 7, 2018, Mr. Shipton finally received confirmation that he had been cleared to resume driving. He texted the information to Mr. Grosscup and reminded him that he would be returning to work the next day. Mr. Grosscup sent him a reply text advising that he needed to report to work an hour early to attend a fact-finding meeting.

38. When Mr. Shipton reported for the fact-finding meeting on Friday, June 8, 2018, Ms. Storck and Assistant General Counsel Theos McKinney along with Union Representative Jerry Warner were present. Ms. Storck and Mr. McKinney said the meeting was a fact-finding interview relating to his FMLA usage.

39. Ms. Storck and Mr. McKinney confronted Mr. Shipton about pictures from his Facebook page showing that he had attended a friend's birthday party on Saturday, June 2, 2018. They also had pictures his wife had posted on Facebook during their vacation. In addition, they had copies of his FMLA paperwork and documentation reflecting all of his absences since the beginning of the year. Mr. Shipton pointed out that the pictures from his Facebook page were all taken on his days off. Because they only provided the dates of his absences and refused to give him copies of the relevant paperwork, he could not provide specific details about his leave usage. Nevertheless, he maintained that all of his absences (except for a couple days he missed for a torn meniscus that were treated as regular sick time) were all related to his diabetes and diabetes-related complications and conditions. At the end of the meeting, Mr. Shipton was informed that he was indefinitely suspended with pay while the paperwork was reviewed and the investigation was completed. No reason was given for his suspension.

40. On June 26, 2018, Mr. Shipton received a call from Ms. Storck and Mr. Wolford notifying him that his employment had been terminated effective that day for "his time off and conflicting paperwork." He subsequently received a letter of termination stating that the basis for his termination was "misuse of sick leave." The termination letter further states that the investigation showed that he had requested and taken sick leave and then submitted conflicting medical documentation. However, during the fact-finding interview, Mr. Shipton was not told or questioned about any alleged inconsistencies in his paperwork. Mr. Shipton contends the reasons given for his termination are false and pretextual and were manufactured to justify his termination.

## COUNT I

**INTERFERENCE WITH RIGHTS IN VIOLATION OF
THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2615(a)**

42. Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

43. Defendants are "employers" within the meaning of the FMLA.

44. At all relevant times, Mr. Shipton was an "eligible" employee within the meaning of the FMLA.

45. Defendants' conduct as described herein violated the FMLA and, more specifically, Section 2612, which requires covered employers to provide eligible employees with up to 12 weeks of unpaid leave a year when they have a serious health condition, and Section 2615(a), which prohibits covered employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided under the Act and prohibits covered employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the Act.

46. Defendant interfered with, restrained, or denied Mr. Shipton's exercise or attempt to exercise his rights provided under the Act within the meaning of Section 2615(a) by, among other things, failing and refusing to promptly notify him of his rights under the FMLA for the first three years of his employment, giving him poor performance reviews based solely on health-related absences that qualified for FMLA coverage, which resulted in the delay or denial of promotions and salary increases and the reduction of his bonuses, and, ultimately, terminating his employment based on absences for a serious health condition within the meaning of the FMLA, which constituted a denial of and an interference with his exercise of his rights under the FMLA.

47. Mr. Shipton engaged in protected activity under the Act by, among other things, exercising his statutorily protected rights to request and to take intermittent leave for a serious health condition and by complaining about Defendants' unlawful practices as described herein.

48. Defendants discriminated and retaliated against Mr. Shipton for opposing unlawful practices within the meaning of Section 2615(a) by, among other things, assigning him less desirable work assignments, suspending his driving privileges, scrutinizing his leave usage, and terminating him for false and pretextual reasons based on absences for a serious health condition within the meaning of the FMLA.

49. Defendants' violations as alleged in this Complaint were intentional, willful, and were not in good faith nor did Defendants have reasonable grounds for believing the acts or omissions described herein were not in violation of Sections 2612 and 2615.

50. Because of the interference with Mr. Shipton's rights and retaliation he suffered as a result of Defendants' violations of the FMLA, Mr. Shipton has suffered substantial damages and is entitled to all legal and equitable remedies available under the FMLA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A declaratory judgment that Defendants have discriminated and retaliated against Plaintiff in violation of the FMLA;

B. A permanent injunction enjoining Defendants and their agents, employees and/or representatives from engaging in any further acts of discrimination and retaliation as set forth above;

C. An Order requiring Defendants to initiate and implement programs that (1) will provide equal employment opportunities for employees who take leave pursuant to the FMLA;

(2) will remedy the effects of Defendants' past and present acts of discrimination and retaliation; and (3) will eliminate the continuing effects of the discriminatory and retaliatory acts described herein;

D. An Order requiring Defendants to initiate and implement systems to ensure that individuals who take leave pursuant to the FMLA are treated in a non-discriminatory manner;

E. An award of back pay, lost benefits, and other damages for lost compensation and job benefits suffered by Plaintiff in an amount to be determined at trial;

F. An award for any actual monetary losses sustained by Plaintiff as a direct result of Defendant's FMLA violations;

G. Liquidated damages in an amount equal to Plaintiff's actual damages as allowed;

H. Any other equitable relief to which Plaintiff is entitled, including, but not limited to, expungement of any negative information contained in his personnel file and reinstatement to his former position with restoration of all leave and benefits or front pay;

I. An award of litigation costs and expenses, including reasonable attorney's fees and reasonable expert witness fees, to Plaintiff;

J. Pre-judgment and post-judgment interest; and

K. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

                                      Respectfully submitted,

                                      /s/

                              _____
                              Tonya Baña  (Bar No. 27326)
                              Tonya Bana LLC
                              129 Slade Avenue
                              Pikesville, MD  21208
                              Tel.: (443) 890-8000
                              Fax: (410) 670-7573
                              E-mail: tonya@tonyabana.com

                              *Attorney for Plaintiff*

Dated:  June 26, 2020