IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| MICHAEL SHIPTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 20-cv-01926-LKG |
| ) | |
| v. ) | Dated: April 11, 2023 |
| ) | |
| BALTIMORE GAS & ELECTRIC ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

# MEMORANDUM OPINION

## I.  INTRODUCTION

Plaintiff, Michael Shipton, brings this civil action against Defendants Baltimore Gas and Electric ("BGE"), Exelon Corporation ("Exelon"), Exelon Business Services Company, LLC ("EBSC"), Michael Grosscup, Edward Wolford, Jeanne Storck and Bindu Gross, alleging violations of the Family and Medical Leave Act ("FMLA") arising from the termination of his employment. ECF No. 23. The parties have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56 on the following three issues: (1) whether Plaintiff may bring his FMLA claims against Defendants Exelon, EBSC, Michael Grosscup, Edward Wolford, Jeanne Storck and Bindu Gross; (2) whether certain claims in this action are time-barred; and (3) whether Plaintiff can prevail on his FMLA interference and retaliation claims. ECF Nos. 42 and 50. Defendants have also moved to strike Plaintiff's reply brief for, among other things, untimeliness. ECF No. 69.

These motions are fully briefed. ECF Nos. 42, 50, 51, 64, 65, 67, 69 and 72. No hearing is necessary to resolve these motions. *See* L.R. 105.6 (D. Md. 2021).

On March 31, 2023, the Court entered an Order that: (1) **GRANTS** Defendants' motion for summary judgment; (2) **DENIES** Plaintiff's cross-motion for summary judgment; (3) **DENIES** Defendants' motion to strike; (4) **DENIES-as-MOOT** Defendants', motion for leave

to file a sur-reply; and (5) **DISMISSES** the amended complaint.  ECF No. 75.  The Court issues this memorandum opinion consistent with that Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this civil action, Plaintiff, Michael Shipton, alleges that the Defendants BGE, Exelon, EBSC, Michael Grosscup, Edward Woolford, Jeanne Storck and Bindu Gross, violated the FMLA by: (1) failing to properly advise him of his FMLA rights; (2) denying him certain promotions; (3) giving him negative performance reviews; and (4) terminating his employment after he took approved FMLA leave.  *See generally*, ECF No. 23.  As relief, Plaintiff seeks, among other things, a declaratory judgment that Defendants discriminated and retaliated against him in violation of the FLMA, back pay, lost benefits, and attorney's fees and costs.  *Id*. at 13-14.

<u>Plaintiff's Employment History</u>

As background, Plaintiff is a former employee of Defendant BGE.  ECF No. 23 at ¶ 2.  BGE is the largest electrical and natural gas utility in central Maryland.  ECF No. 42-2 Joint Statement of Undisputed Facts ("JSOF") at ¶ 1.  During the relevant time period for this case, BGE and EBSC were wholly owned subsidiaries of Exelon Corporation.  ECF No. 23 at ¶ 3.

In 2017 and 2018, Defendant Michael Grosscup was Plaintiff's direct supervisor and Defendant Edward Woolford was Plaintiff's second level supervisor.  *Id.* at ¶¶ 7, 8.  During the time period relevant to this case, Defendant Jeanne Storck was employed by BGE as a Human Resources Business Partner.  ECF No. 63-2 at 224.  During the time period relevant to this case Defendant Bindu Gross was employed by EBSC, while embedded at BGE as a labor relations principle.  ECF No. *Id.* at 222.

In March 2014, BGE hired Plaintiff as a utility trainee in the underground gas department.  *Id.* at ¶ 4.  After completing training, Plaintiff became an underground gas

---

[1] The facts recited in this memorandum opinion are taken from the parties' joint statement of undisputed facts; the amended Complaint; Defendants' motion for summary judgment and the memorandum in support thereof; Plaintiff's cross-motion for summary judgment and the memorandum in support thereof; and the parties' joint record.  ECF Nos. 42-2, 23, 42, 50, 62, 63.

mechanic. *Id*. at ¶ 5.  Plaintiff remained in this position until the termination of his employment on June 26, 2018.  *Id.*

Plaintiff alleges that he was diagnosed with diabetes in 2003.  ECF No 63-2 at 12.  Plaintiff also alleges that, as a result of his diabetes, he suffers from diabetes-related symptoms, including hypoglycemia, hyperglycemia, weakness, fatigue and neuropathy.  *Id*. at 12, 14-15, 250-59.

Plaintiff contends that throughout his employment with BGE, he took sick days due to his diabetes.  ECF No. 50 at 4.  But Plaintiff alleges that "no information was provided to him regarding his right to use intermittent FMLA for those absences for nearly two years" after he began work at BGE.  ECF No. 50 at 4.  It is undisputed that Plaintiff was granted a FMLA designation beginning in April of 2015 for leave attributed to sicknesses related to diabetes.  ECF No. 63-2 at 22, 106-108.

Plaintiff's 2017 Leave Applications

Relevant to the pending cross-motions, it is undisputed that Plaintiff had several absences from work in 2017, which were explained as due to diabetes and diabetes-related symptoms.  ECF Nos. 42-1 at 8; 63-2 at 26.  Given this, Plaintiff's immediate supervisor, Mr. Grosscup, recommended to Plaintiff that he apply for FMLA leave.  ECF Nos. 42-1 at 8; 63-2 at 26.

It is also undisputed that Plaintiff subsequently applied for, and was granted, FMLA leave authorization in August of 2017.  JSOF ¶ 11.  Plaintiff's leave request form states that he is requesting FMLA leave for "my own serious health condition."  ECF No. 63-2 at 113.  The FMLA health certification completed in support of Plaintiff's leave request by physician assistant Chelsea Hamershock also states that Plaintiff required up to three days of leave, once or twice per four-week period.  *Id.* at 114.

Ms. Hamershock also states in this certification that Plaintiff "is an uncontrolled diabetic with very fluctuant blood sugars; often with episodes of hypoglycemia which leads to the following (and not-all-inclusive): sweats, shakey [sic], blurred vision, dizzy, clammy, balance disturbance, foggy/confused, [headaches], nauseous."  *Id.*  In addition, Ms. Hamershock states in her certification that, "[d]uring these episodes, [Plaintiff] is unable to perform any of his essential job duties."  *Id.*  And so, Plaintiff's employer approved FMLA leave for periods of time when Plaintiff was either "incapacitated by the medical condition identified" by Ms. Hamershock, or "at a medical appointment that cannot be scheduled outside of working hours."  *Id.* at 121.  It is

3

undisputed that Plaintiff took leave pursuant to his approved FMLA designation.  ECF Nos. 42-1 at 9; 63-2 at 34.

In December 2017, Plaintiff applied for the continuation of his FMLA leave.  ECF No. 63-2 at 131.  To support this request, Ms. Hamershock submitted another health certification stating that Plaintiff  "is a diabetic [with] very labile blood sugars; often [with] episodes of hypoglycemia which leads to" the same symptoms list as the August 2017 submission.  *Id*. at 132.  And so, Plaintiff was approved for FMLA leave for "time away from work that falls within the January 2, 2018 Certification" by Ms. Hamershock.  *Id.* at 136.  It is undisputed that Plaintiff took leave pursuant to the approved FMLA designation.  ECF Nos. 42-1 at 10; 63-2 at 36.

Plaintiff's 2017 Performance Evaluation

In February 2018, Plaintiff received his performance evaluation for 2017.  *See* ECF No. 63-2 at 143-149.  It is undisputed that Plaintiff received a (B-) performance rating for that evaluation.  JSOF ¶ 15.  In the comments to the performance evaluation, Mr. Grosscup commented that Plaintiff "struggled with attendance and lateness . . . He needs to stay focused on attendance and realize how it hurts the rest of the team."  ECF No. 63-2 at 145.  Mr. Grosscup also commented that Plaintiff "has [accepted] the fact of his absences and needs to improve his poor planning when calling in at the last minute for a vacation day and sick time."  *Id.*  And so, Mr. Grosscup concluded that:

> [Plaintiff] is meeting expectations in some areas but is still lacking in others such as dependability.  Mike had nine sick occurrences from 1-2017 to 7-2017.  Mike also had five sick occurrences from 9-2017 to 12-2017, which were covered under FMLA, the absences from the first part of the year were not covered.  Mike used a total of 248 Hours of sick time 88 was paid time and 160 hours of unpaid sick time.

*Id*. at 149.

It is undisputed that Plaintiff did not receive a step increase in 2018 due to this performance review.  JSOF at ¶16.  But Plaintiff did receive a merit increase in pay in 2018.  *Id*.  Plaintiff alleges that his supervisors gave him poor performance evaluations, which negatively impacted his promotional opportunities and compensation, based upon absences from work, which they knew, or should have known, qualified for coverage under the FMLA.  ECF No. 23 at ¶ 46.

### Plaintiff's CDL Suspension

In early April 2018, Plaintiff used three days of intermittent FMLA leave to address severe foot pain (neuropathy) prior to taking a planned vacation. ECF No. 63-2 at 39-40. On April 6, 2018, Plaintiff was directed to appear at BGE's Occupational Health Services ("OHS") department, where his blood sugar level was tested. *Id.* at 40. Defendants allege that the test showed that Plaintiff was not, and had not recently been, in the midst of a hypoglycemic episode. ECF No. 42-1 at 11; *see also* ECF No. 63-2 at 40 (describing Plaintiff's recollection of the nurses saying his blood sugar was "okay."). On April 7, 2018, Plaintiff went on vacation to Jamaica. JSOF at ¶ 19; ECF No. 63-2 at 40.

Upon his return to work, Plaintiff was directed to again report to BGE's OHS. JSOF at ¶ 20; ECF No. 63-2 at 42. During this meeting, Plaintiff was informed that his hypoglycemia symptoms, as stated in his health certification, were inconsistent with his ability to hold a commercial driver's license ("CDL"). ECF No. 63-2 at 42.

On April 19, 2018, BGE suspended Plaintiff's CDL "until he has a valid Medical Examiners Certificate," because Plaintiff's condition of diabetes-related hypoglycemia was "inconsistent with his ability to hold a CDL per the applicable [Department of Transportation] regulations." ECF No. 63-2 at 230; ECF No. 42-1 at 12; *see also* ECF No. 63-2 at 40-41. And so, BGE told Plaintiff that he needed to obtain a medical clearance letter from Ms. Hamershock to be permitted to regain his CDL. *Id.* at 44.

### Plaintiff's 2018 Leave Application

Plaintiff again applied for FMLA leave on April 25, 2018. ECF No. 63-2 at 151. Plaintiff's application was certified by Dr. Preethi Kadambi, who had been Plaintiff's endocrinologist and diabetes-related provider since March of 2018. *Id.* at 154, 159.

In the health certification, Dr. Kadambi states that Plaintiff has "peripheral neuropathy with symptoms of numbness, tingling and burning sensation" and that Plaintiff's need for leave was now 1-2 days per 3-6 months. *Id.* at 156-157. Dr. Kadambi also states that "Patient can have some worsening of neuropathy or sugars periodically-will not require absence from work unless severe." *Id*. at 157. In addition, Dr. Kadambi states that Plaintiff "has been checking sugars diligently and has not had any episodes of hypoglycemia since he first saw me." *Id.* BGE granted Plaintiff's request for intermittent leave FMLA effective on April 19, 2018, under the new health certification for peripheral neuropathy. *Id.* at 43, 23.

5

Dr. Kadambi also provided a May 3, 2018, letter in response to the decision to suspend Plaintiff's CDL stating that:

> I have been seeing [Plaintiff] for diabetes care since March 2018. He has reasonably well controlled diabetes - blood sugars have improved significantly. He has symptoms of peripheral neuropathy but no loss of sensation or joint position sense. He has not had any hypoglycemia since he first saw me [in March of 2018].

*Id.* at 159.

On May 30, 2018, Ms. Hamershock wrote a letter in response to the decision to rescind Plaintiff's CDL license, which states that:

> There have been no hypoglycemic events in over 2 years. He does not experience blurred or double vision, paresthesis, dizzy/clammy, sweaty, shaky, headaches, nausea, or vomiting. . . [Plaintiff] has not had recurring (2+) disqualifying hypoglycemic reactions within 5 years as listed in the FMCSA guidelines. . . [Plaintiff] routinely monitors his blood sugars and they have been controlled – not in the range of hypo or hyperglycemia.

*Id.* at 160. And so, Ms. Hamershock certified that Plaintiff was "fit for duty in all capacities" and that Plaintiff should be permitted to "resume driving utilizing [h]is CDL credential immediately and without restriction." *Id.*

Defendants maintain that the documentation from Dr. Kadambi and Ms. Hamershock conflicts with the August 2017 and January 2018 FMLA health certifications that Plaintiff previously submitted to BGE. ECF 42-1 at 8. In this regard, Defendants argue the letters are "both inconsistent with [Plaintiff]'s prior FMLA certification and FMLA absences, because in March 2018 and May 2018, [Plaintiff] had taken FMLA absences under his January 2018 certification for episodes of hypoglycemia." *Id*.

Plaintiff's Fact-Finding Interview And Termination

On June 4, 2018, Plaintiff notified Mr. Grosscup via text that he was sick and would not report to work. ECF No. 63-2 at 254, 261. After returning to work on June 8, 2018, Plaintiff participated in a fact-finding conference regarding his FMLA leave usage with Mr. Gross, Ms. Storck and Gerry Werner. JSOF at ¶ 26; ECF No. 62-6 at 125.

The fact-finding interview was predicated upon "alleged discrepancies in [Plaintiff's] paperwork" and the fact that Plaintiff had previously admitted to OHS that he did not have hypoglycemia during the three days that he took FMLA leave in April 2018. ECF No. 42-1 at 15; *see*

6

*also* ECF No. 63-2 at 41.  Defendants allege that Plaintiff's answers to the questions posed during the fact-finding interview did not satisfactorily resolve the discrepancies in the medical documentation that Plaintiff submitted to support his FMLA leave applications, *i.e.*, "why [Plaintiff's] 2017 and 2018 FMLA paperwork stated that he 'often experiences episodes of hypoglycemia' but medical documentation that he submitted so that his CDL could be restored said that he did not experience any such episodes."  ECF No. 42-1 at 15.

Following the fact-finding interview, Plaintiff's employer held a consensus call to determine whether to terminate Plaintiff's employment.  ECF No. 63-2 at 223 ¶ 8.  The participants on the call were the Vice-President of Human Resources, the Director of Human Resources, the Vice-President of Labor Relations, Ms. Storck, Mr. Gross and a representative from BGE's legal department.  ECF No. 63-2 at 223, 225.

On June 26, 2018, Plaintiff was notified of the immediate termination of his employment. JSOF at ¶ 27.  The termination letter states that "[t]he basis for [Plaintiff's] termination [was] related to misuse of sick leave."  ECF No. 63-2 at 216.  In this regard, the termination letter also states that "[o]ur investigation showed that [Plaintiff had] requested and taken sick leave and then submitted conflicting medical documentation."  *Id.*; *see also* ECF No. 62-6 at 111 ("BGE has determined [Plaintiff] improperly used the Company's policy on FMLA leave by requesting and taking intermittent leave for hypoglycemia, then denying that he had any hypoglycemic episodes for two years after he was notified that those episodes impacted his medical clearance to maintain his CDL license.").  And so, BGE terminated Plaintiff's employment on June 26, 2018.  *Id*.

Thereafter, Plaintiff commenced this action on June 26, 2020.  ECF No. 1.

B.    **Procedural Background**

Plaintiff commenced this action on June 26, 2020.  ECF No. 1.  On December 14, 2020, Plaintiff filed an amended complaint by leave of the Court.  ECF Nos. 22, 23.  Defendants answered the amended complaint on March 2, 2021.  ECF No. 29.

On February 25, 2022, Defendants filed a motion for summary judgment, a memorandum in support thereof and a joint statement of undisputed material facts.  ECF Nos. 42, 42-1, 42-2. On April 12, 2022, Plaintiff filed a response in opposition to Defendant's motion for summary judgment, a cross-motion for summary judgment and memorandum in support thereof.  ECF Nos. 50, 50-1.

Defendants filed a reply brief and response in opposition to Plaintiff's cross-motion on May 6, 2022. ECF No. 51. On June 1, 2022, Plaintiff filed the joint record, which was amended on June 9, 2022. *See* ECF Nos. 62, 63.

On June 17, 2022, Plaintiff filed a reply brief in support of his cross-motion for summary judgment. ECF No. 64.

On July 1, 2022, Defendants moved to strike Plaintiff's reply brief, or alternatively, for leave to file a sur-reply. ECF No. 65. On July 25, 22, Plaintiff filed a response in opposition to Defendants' motion to strike. ECF No. 69. Defendant filed a reply brief in support of their motion to strike on August 9, 2022. ECF No. 70.

These motions having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to

confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *see also Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("[U]nsubstantiated allegations and bald assertions" are insufficient to present a genuine issue of material fact.). When faced with cross-motions for summary judgment, the Court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 62 n. 4 (1st Cir. 1997) (citation and internal punctuation omitted).

### B.     The FMLA

The Family Medical Leave Act allows eligible employees to take "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). Claims can be brought under the FMLA for either interference with an entitlement to FMLA leave, or retaliation for exercising the right to FMLA leave. 29 U.S.C. § 2615(a).

In this regard, the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The United States Court of Appeals for the Fourth Circuit has explained that "[t]he substantive rights guaranteed by the FMLA are prescriptive, and a plaintiff seeking redress for employer interference with an entitlement is only required to show that he or she qualified for the right that was denied." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006)) (emphasis in original). And so, to prevail on an interference with FMLA leave claim, an employee must show: "(1) that he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (citations omitted).

The Fourth Circuit has cautioned, however, that requesting and taking FMLA leave "does not prevent 'an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior.'" *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 249 (4th Cir. 200), *cert. denied*, 141 S. Ct. 2595, 209 L. Ed. 2d 732 (2021) (quoting *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 304-05 (4th Cir. 2016)). The Fourth Circuit has also explained that "an employer does not interfere with the exercise of FMLA rights where it terminates an employee's

9

employment based on the employer's honest belief that the employee is not taking FMLA for an approved purpose." *See Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013) (citing *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 680–81 (7th Cir.1997)).

The FMLA also provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). A claim of retaliatory discharge under the FMLA is analyzed under the same burden-shifting framework that applies to retaliatory discharge claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. *Adams*, 789 F.3d at 429 (citations omitted). And so, an employee claiming FMLA retaliation must make a prima facie showing that: (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) the adverse action was causally connected to his protected activity. *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 546, 551 (4th Cir. 2006); *see also Sharif*, 841 F.3d at 203 (same).

Because a FMLA retaliation claim is "proscriptive," "employer intent . . . is relevant." *Sharif*, 841 F.3d at 203. Such "[i]ntent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)." *Id.* In this regard, the Fourth Circuit has held that "[r]etaliation claims . . . require the employee to show that retaliation was a but-for cause of a challenged adverse employment action." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (internal quotation marks omitted). The "Fourth Circuit has also explained that, 'for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.'" *Clem v. Maryland*, 2022 WL 14912707, at *4 (D. Md. 2022) (quoting *Waag v. Sotera Def. Sol., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017)).

If an FMLA plaintiff "puts forth sufficient evidence to establish a prima facie case of retaliation," the employer must offer a satisfactory "non-discriminatory explanation" for the adverse employment action. "'In reviewing whether an employer's decision is unlawful, the Court's task is not 'to decide whether the reason [for terminating employment] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the decision].'" *Clem*, 2022 WL at *5 (D. Md. 2022) (quoting *Mercer v. Arc of Prince George's Cnty.*, 532 F.App'x 392, 399 (4th

10

Cir. 2013)) (brackets added and in original).  Given this, "[t]o meet its burden of offering a legitimate non-discriminatory reason for the plaintiff's termination, a defendant need only have had an honest belief that the alleged reason or misconduct occurred." *Id.* (quotation omitted).

A FMLA plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Yashenko*, 446 F.3d at 551 (internal quotation marks omitted); *Sharif*, 814 F.3d at 203.  "A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation." *Sharif*, 814 F.3d at 203 (citations omitted).  But "'a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'" *Id.* (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000).

Lastly, the statute of limitations under the FMLA is two years. *See* 29 U.S.C. § 2617(c)(1).  But the FMLA allows for this statute of limitations to be extended to three years if the employer willfully violated the FMLA. *See* 29 U.S.C. § 2617(c)(2).  The Fourth Circuit has held that an employer willfully violates the FMLA when the employer knew or showed reckless disregard for whether its conduct violated the FMLA. *See Settle v. S.W. Rodgers Co.*, 182 F.3d 909, *3 (4th Cir. 1999) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-35 (1988)). Given this, a FMLA plaintiff must show more than mere negligence in failing to inform them of their FMLA rights. *Id.* (citing *McLaughlin*, 486 U.S. at 133-35).  And so, this Court has "generally 'found no willfulness where the employer granted the employee's request for leave.'" *Smith v. BHS Hospital Services Inc.*, 2022 WL 2344156, at *11 (D. Md. 2022) (quoting *Honeycutt v. Baltimore Cnty.*, 2007 WL 1858691, at *3 (D. Md 2007)), *aff'd*, 278 Fed. Appx. 292 (4th Cir. 2008)).

**IV.    ANALYSIS**

The parties have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56 on the following three issues: (1) whether Plaintiff may bring his FMLA claims against Defendants Exelon, EBSC, Michael Grosscup, Edward Wolford, Jeanne Storck and Bindu Gross; (2) whether certain claims in this action are time-barred; and (3) whether Plaintiff can prevail on his FMLA interference and retaliation claims.  ECF Nos. 42 and 50.

In their motion for summary judgment, Defendants argue that the Court should enter judgment summarily in their favor on Plaintiff's FMLA claims, because: (1) Plaintiff's claims

11

against Defendants Exelon, EBSC, Michael Grosscup, Edward Wolford, Jeanne Storck and Bindu Gross should be dismissed; (2) any claims in this action that are unrelated to Plaintiff's termination are time-barred under the FMLA's applicable statute of limitations; and (3) the undisputed material facts show that Plaintiff cannot prevail on his FMLA interference and retaliation claims.  ECF Nos. 42-1 at 11-23; 51 at 9-10.

Plaintiff counters that the undisputed material facts in this case show that: (1) Defendants Exelon, EBSC, Michael Grosscup, Edward Wolford, Jeanne Storck and Bindu Gross are properly named defendants in this matter; (2) there is ample evidence to show that Defendants willfully violated the FMLA to support the application of the FMLA's three-year statute of limitations in this case; and (3) the undisputed material facts show that Defendants interfered with his FMLA leave, and retaliated against him for using such leave, by, among other things, terminating his employment.  ECF No. 50 at 13-21; ECF No. 64 at 34-47.  And so, Plaintiff requests that the Court deny Defendants' motion for summary judgment and grant his cross-motion.  ECF No. 50 at 21.

Lastly, Defendants have moved to strike Plaintiff's reply brief or, alternatively, for leave to file a sur-reply.  ECF Nos. 65, 69, and 72.

For the reasons that follow, the undisputed material facts in this case show that Defendants did not willfully violate the FMLA with regards to Plaintiff's leave requests.  The undisputed material facts also show that Plaintiff cannot prevail on his FMLA interference and retaliation claims, because Defendants terminated his employment based upon an honest belief that Plaintiff misused his FMLA leave in early 2018.  And so, the Court: (1) **GRANTS** Defendants' motion for summary judgment; (2) **DENIES** Plaintiff's cross-motion for summary judgment; (3) **DENIES** Defendants' motion to strike; (4) **DENIES-as-MOOT** Defendants' motion for leave to file a sur-reply; and (5) **DISMISSES** the amended complaint.

A. **The FMLA's Two-Year Statute Of Limitations Applies To Plaintiff's Claims**

As an initial matter, Defendants persuasively argue that the FMLA's two-year statute of limitations precludes Plaintiff's FMLA claims based upon events that occurred before the termination of his employment on June 26, 2018.  The statute of limitations under the FMLA is two years, unless Plaintiff can show that his employer willfully violated the FMLA.  *See* 29 U.S.C. § 2617(c)(1*See* 29 U.S.C. § 2617(c)(2).  In such circumstances, the FMLA allows for the statute of limitations to be extended to three years.  *Id*.

The Fourth Circuit has held that an employer willfully violates the FMLA when the employer knew or showed reckless disregard for whether its conduct violated the FMLA. *See Settle*, 182 F.3d at *3 (4th Cir. 1999) (citing *McLaughlin*, 486 U.S. at 132-35 ). But this Court has generally "'found no willfulness where the employer granted the employee's request for leave.'" *Smith*, 2022 WL 2344156, at *11  (quoting *Honeycutt* , 2007 WL 1858691, at *3), *aff'd*, 278 Fed. Appx. 292 (4th Cir. 2008)).

That is precisely the circumstance presented in this case. The undisputed evidence shows that BGE repeatedly granted Plaintiff's FMLA leave requests, starting in 2015, and continuing into 2017 and 2018. ECF No. 63-2 at 22, 36, 106-108, 121, 127, 136, 150; JSOF ¶ 11. The evidence also shows that Plaintiff's direct supervisor, Mr. Grosscup, encouraged Plaintiff to request FMLA leave in 2017. ECF Nos. 42-1 at 8; 63-2 at 26. Given this evidence, the Court agrees with Defendants that Plaintiff fails to show that his employer willfully violated the FMLA. And so, the FMLA's two-year statute of limitations applies to this case. *Smith*, 2022 WL 2344156, at *11 ("where the employer granted the employee's request for leave.'").

It is undisputed that Plaintiff brought this action on June 26, 2020. ECF No. 1. And so, any of his FMLA claims that are based on events that occurred before his June 26, 2018, termination are time-barred under the FMLA.[2]

---

[2] While not dispositive of this matter, Defendants also argue with some persuasion that all Defendants except BGE should be dismissed from this FMLA matter. During the relevant time period for this case, BGE and EBSC were wholly owned subsidiaries of Exelon Corporation. ECF No. 23 at ¶ 3. But it is undisputed that BGE hired Plaintiff as an underground gas mechanic in March 2014, and that Plaintiff remained in that position until the termination of his employment on June 26, 2018. JSOF at ¶¶ 4-5. *Id.* And so, the evidence indicates that BGE was Plaintiff's employer. *See* 29 U.S.C. § 2611(4)(A)(ii)(I). (an employer under the FMLA is "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."). The undisputed material facts also show that Defendants Grosscup, Woolford, Gross and Storck are not proper individual defendants in this FMLA action. To the extent that these individuals were Plaintiff's direct supervisors, the evidence before the Court fails to establish that any of these individuals had a decisive role in the decision to grant or deny Plaintiff's FMLA leave requests, or to terminate Plaintiff's employment. Notably, the undisputed material facts show that Mr. Grosscup and Mr. Woolford did not participate in the fact-finding interview with Plaintiff. JSOF at ¶ 26; ECF No. 62-6 at 125. The undisputed material facts also show that, while Ms. Storck and Mr. Gross did participate on the call to discuss Plaintiff's termination, several other senior officials within BGE, such as the Vice-President of Human Resources, the Director of Human Resources and the Vice-President of Labor Relations, also participated on this call and in the decision to terminate Plaintiff. *Id.* at 223 ¶ 8; 225 ¶ 5. *See Caire v. Conifer Value Based Care, LLC*, 982 F. Supp 582, 598 (D. Md. 2013) (holding that individual liability under the FMLA for direct supervisors is appropriate only where the supervisors have "sufficient responsibility or stature within the [defendant employer] to warrant the imposition of personal liability under the FMLA.").

### B.     Plaintiff Cannot Prevail On His FMLA Claims

Turning to the merits of Plaintiff's FMLA claims, the undisputed material facts also show that Plaintiff cannot prevail on his FMLA interference and retaliation claims, based upon the termination of his employment, for several reasons.

First, the unrebutted evidence before the Court shows that Plaintiff cannot establish that Defendants interfered with his FMLA rights by terminating his employment. To prevail on an interference with FMLA leave claim, Plaintiff must show: "(1) that he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams*, 789 F.3d at 427 (citations omitted). This Court has recognized that "refusing to authorize FMLA leave" and "using the taking of FMLA leave as a negative factor in employment actions," such as the termination of employment, are acts that can constitute interference with an employee's FMLA rights. *Bosse v. Baltimore County*, 692 F. Supp. 2d 574, 585 (D. Md. 2010). But, the Fourth Circuit has also explained "that an employer does not interfere with the exercise of FMLA rights where it terminates an employee's employment based on the employer's honest belief that the employee is not taking FMLA for an approved purpose." *See Mercer*, 532 F. App'x at 396 (citing *Kariotis,* 131 F.3d at 680–81).

Here, it is undisputed that Plaintiff applied for, and received, FMLA leave on several occasions before he was terminated. *See* ECF No. 63-2 at 22, 36, 106-108, 121, 127, 136, 150; JSOF ¶ 11. And so, this FMLA dispute centers on whether BGE interfered with the provision of that benefit by terminating Plaintiff's employment on June 26, 2018. ECF Nos. 42-1 at 25-27; 64 at 41-42.

In this regard, the undisputed material facts make clear that Defendants did not interfere with the Plaintiff's FMLA rights, because they terminated Plaintiff's employment based upon the honestly-held belief that Plaintiff had misused his FMLA leave in early 2018 and submitted conflicting medical documentation regarding his hypoglycemia. ECF Nos. 63-2 at 216; 62-6 at 111. Specifically, the undisputed material facts show that Plaintiff applied for, and was granted, FMLA leave authorization in August of 2017. JSOF ¶ 11. The undisputed material facts also show that Defendants reasonably believed that Plaintiff requested FMLA leave to address symptoms related to his hypoglycemia.

Notably, the FMLA health certification completed by Ms. Hamershock states that: [Plaintiff ] "*is an uncontrolled diabetic with very fluctuant blood sugars*; *often with episodes of*

14

*hypoglycemia* which leads to the following (and not-all-inclusive): sweats, shakey [sic], blurred vision, dizzy, clammy, balance disturbance, foggy/confused, [headaches], nauseous." *Id.* at 117. (emphasis supplied).  Ms. Hamershock's certification also states that, "[d]uring these episodes, [Plaintiff] is unable to perform any of his essential job duties." *Id.*

Plaintiff's subsequent leave request similarly focuses on his hypoglycemia.  It is undisputed that Plaintiff applied for the continuation of his FMLA leave in December 2017.  *Id.* at 127.  To support this leave request, Ms. Hamershock submitted another certification stating that Plaintiff "*is a diabetic [with] very labile blood sugars; often [with] episodes of hypoglycemia which leads to*" the same symptoms list as the August 2017 submission.  *Id.* at 132 (emphasis supplied).  Given this, the evidence before the Court shows that the reason given for Plaintiff's FMLA leave request in 2017 was his episodes of hypoglycemia.

The unrebutted evidence in this case also shows that Defendants had an honest belief that the medical documentation that Plaintiff submitted in May 2018 to reinstate his CDL conflicts with the two health certifications discussed above, with regards to whether Plaintiff suffered from episodes of hypoglycemia.  Again, it is undisputed that, after BGE suspended Plaintiff's CDL, Dr. Kadambi provided a May 3, 2018, letter stating, in relevant part, that:

> I have been seeing [Plaintiff] for diabetes care since March 2018.  *He has reasonably well-controlled diabetes - blood sugars have improved significantly*.  He has symptoms of peripheral neuropathy but no loss of sensation or joint position sense.  *He has not had any hypoglycemia since he first saw me.*

*Id.* at 159 (emphasis supplied).  It is similarly undisputed that, on May 30, 2018, Ms. Hamershock also wrote a letter in response to the decision to suspend Plaintiff's CDL, which makes similar findings regarding the status of Plaintiff's hypoglycemia:

> *There have been no hypoglycemic events in over 2 years.*  He does not experience blurred or double vision, paresthesis, dizzy/clammy, sweaty, shaky, headaches, nausea, or vomiting. . . [Plaintiff] has not had recurring (2+) disqualifying hypoglycemic reactions within 5 years as listed in the FMCSA guidelines. . . [Plaintiff] routinely monitors his blood sugars and they have been controlled – not in the range of hypo or hyperglycemia.

*Id.* at 160 (emphasis supplied.).

The record evidence also shows that Defendants had concerns in 2017 and early 2018 about whether these letters were inconsistent with the FMLA leave health certifications that

15

Plaintiff submitted in 2017.  Notably, the evidence shows that Defendants found the letters from Plaintiff's medical providers to be inconsistent with Plaintiff's prior FMLA health certification, and with Plaintiff's FMLA absences in early 2018, because Plaintiff had taken FMLA leave for episodes of hypoglycemia in March 2018 and May 2018.  *Id.* at 219, 221, 222-23, 224-25; ECF No. 62-6 at 57, 90-100, 104-108.

Mr. Gross and Ms. Storck also testified during their respective depositions that, in 2017 and 2018, Plaintiff's supervisors had concerns about Plaintiff's pattern of improper leave and conflicts between his FMLA health certification and the medical documentation from Dr. Kadambi and Ms. Hamershock.  ECF No. 63-3 at 69-71, 97-98.  These concerns are memorialized in the contemporaneous notes of Mr. Gross and Ms. Storck taken during the June 8, 2018, fact-finding interview with Plaintiff.  ECF No. 62-6 at 90, 104; *see also* ECF No. 63-2 at 222-23, 224-25.

The record evidence also shows that Defendants terminated Plaintiff's employment because of his purported misuse of FMLA leave in early 2018.  In this regard, Plaintiff's termination letter states that the basis for Plaintiff's termination is "related to misuse of sick leave."  ECF No. 63-2 at 216.  This letter also states that BGE's "investigation showed that [Plaintiff had] requested and taken sick leave and then submitted conflicting medical documentation."  *Id.*; *see also* ECF No. 62-6 at 111 ("BGE has determined [Plaintiff] improperly used the Company's policy on FMLA leave by requesting and taking intermittent leave for hypoglycemia, then denying that he had any hypoglycemic episodes for two years after he was notified that those episodes impacted his medical clearance to maintain his CDL license.").  Given this evidence, which is unrebutted by Plaintiff, the undisputed material facts in this case show that Defendants held an honest belief that Plaintiff misused his FMLA leave in early 2018, and that Defendants terminated Plaintiff's employment for this reason.

Plaintiff's argument that his termination was improper under the FMLA and pretextual is also unpersuasive for several reasons.

First, Plaintiff argues that Defendants incorrectly found that he misused FMLA leave and submitted conflicting medical documentation, because the evidence establishes that he was entitled to take FMLA leave for absences due to symptoms related to his diabetes, including the neuropathy.  ECF No. 50 at 15; *see also* ECF No. 64 at 39 (detailing the Plaintiff's argument that "the record conclusively establish[es] that [Plaintiff] was entitled to take FMLA leave for

16

absences due to *diabetes*.") (emphasis in original). But, Plaintiff's disagreement with Defendants regarding the scope of his FMLA leave in early 2018 does not refute the evidence before the Court showing that Defendants honestly *believed* that he misused his FMLA leave and submitted conflicting medical documentation regarding his hypoglycemia. *See Mercer*, 532 F. App'x at 396 (citing *Kariotis*, 131 F.3d at 680-81); *Clem*, 2022 WL 14912707 at *5. Given this, Plaintiff has not established a genuine issue of material fact regarding whether Defendants held an honest belief that he misused his FMLA leave in early 2018.

Plaintiff's criticism that Defendants only rely upon the "conclusory statements from Bindu Gross" to show that they had an honest belief that he misused his FMLA leave is also belied by the evidence. *See e.g.,* ECF No. 42-1 at 23-27; ECF No. 63-2 at 219, 221, 222-23, 224-25; ECF No. 63-3 at 69-71, 97-98; ECF No. 62-6 at 57, 90-100, 103-108; ECF No. 63-2 at 46-47 (Plaintiff's deposition testimony acknowledging that BGE could find his medical documentation to be inconsistent); ECF Nos. 63-2 at 185-186 (Ms. Hamershock acknowledging the paperwork she filed was inconsistent in retrospect); ECF No, 63-3 at 138 (Dr. Preethi Sriram Kadambi) acknowledging that Plaintiff's medical documentation would be inconsistent).

Indeed, the unrebutted evidence in this case shows that Defendants terminated Plaintiff's employment because they believed that Plaintiff misused his FMLA leave in early 2018 and that he also submitted conflicting medical documentation. This view is supported by the contemporaneous notes of Ms. Storck and Mr. Bindu, reflected in Plaintiff's termination letter, supported by the deposition testimony of Ms. Storck and Mr. Bindu, and even supported by Plaintiff's own deposition testimony and the deposition testimony of Ms. Hamershock and Dr. Kadambi. Given this, Plaintiff cannot prevail on his FMLA interference claim. *See Mercer*, 532 F. App'x at 396 (citing *Kariotis,* 131 F.3d at 680–81). And so, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's cross-motion for summary judgment for this claim.

For similar reasons, the undisputed material facts in this case show that Plaintiff cannot prevail on his FMLA retaliation claim. To prevail on this claim, Plaintiff must show that: (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) the adverse action was causally connected to his protected activity. *Yashenko*, 446 F.3d at 551.

If Plaintiff "puts forth sufficient evidence to establish a prima facie case of retaliation," Defendants must offer a satisfactory "non-discriminatory explanation" for the adverse

employment action. And so, as discussed above, Defendants need only have had an honest belief that the alleged reason or misconduct occurred to meet their burden of providing non-discriminatory explanation for the termination. *Clem*, 2022 WL at *5 (D. Md. 2022) (quoting *Mercer v. Arc of Prince George's Cnty.*, 532 F.App'x 392, 399 (4th Cir. 2013)).

Plaintiff also "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." *Yashenko*, 446 F.3d at 551 (internal quotation marks omitted); *Sharif*, 814 F.3d at 203. "A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation." *Sharif*, 814 F.3d at 203 (citations omitted). But "'a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'" *Id.* (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000).

The undisputed material facts here show that Plaintiff cannot meet his burden to establish that the stated reason for his termination was pretext for FMLA retaliation. As discussed above, Defendants have advanced a legitimate, non-discriminatory reason for terminating Plaintiff's employment, namely, that Plaintiff misused his FMLA leave and submitted conflicting medical documentation. *See Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013) (citing *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 680–81 (7th Cir.1997)).

Plaintiff fails to rebut this stated reason with any evidence to show that Defendants' reason for terminating his employment was a pretext for FMLA retaliation. ECF Nos. 50 and 64. Indeed, while Plaintiff contends in this action that the termination of his employment "was the culmination of a persistent campaign of unwarranted scrutiny, false and baseless accusations that he misused leave, and disparate treatment predicated on nothing more than his taking FMLA leave," he points to no facts or evidence to substantiate this claim. ECF No. 64 at 25-28 (providing no evidence to show that Plaintiff received disparate treatment because of his use of FMLA leave).

As discussed above, the evidence in the joint record, the deposition testimony of several witnesses, and the contemporaneous notes of Ms. Storck and Mr. Bindu regarding the fact-finding interview substantiate Defendants' position that they held an honest belief that Plaintiff misused his FMLA leave in early 2018 and terminated Plaintiff's employment for this reason.

Plaintiff's bald assertions to the contrary are not sufficient to show pretext. *Dockins v. Benchmark Commc'ns*, 176 F.3d 745, 749 (4th Cir. 1999) ("a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge."). For this reason, the Court also GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's cross-motion for summary judgment on Plaintiff's FMLA retaliation claim.

## IV. CONCLUSION

In sum, the undisputed material facts in this case show that all claims except Plaintiff's termination claim are time-barred under the FMLA. In addition, the unrebutted evidence in this case makes clear that Plaintiff cannot prevail on his FMLA interference and retaliation claims. And so, for the foregoing reasons, the Court:

1. **GRANTS** Defendants' motion for summary judgment;
2. **DENIES** Plaintiff's cross-motion for summary judgment;
3. **DENIES** Defendants' motion to strike;
4. **DENIES-as-MOOT** Defendants' motion for leave to file a sur-reply; and
5. **DISMISSES** the amended complaint.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
